Good afternoon, Your Honor. Deepak Gupta for Plaintiff Gabriel Moran. I'll be sharing my time with Mr. Joshi of the Consumer Financial Protection Bureau in the Federal Trade Commission. He'll be discussing the Fair Credit Reporting Act issue. I'd like to start with the constitutional issue. I know this has been a long calendar, and so I want to jump right into it, and I think the best place to start is the District Court's decision, the District Court's holding on the constitutional issue. And you can find that at excerpt of records, page 46. And towards the bottom of the page, just before the section heading, I think that's where you can find the closest summary of what the District Court's logic was. JUSTICE SCALIA This is a new agency, right? MR. MORAN It is a new agency, that's right. I'm not speaking on behalf of the agency, of course. But yes, the Consumer Financial Protection Bureau is a new agency created by the Dodd-Frank Act, the Wall Street Reform and Consumer Protection Act. And interpretive authority over the Fair Credit Reporting Act was transferred from the Federal Trade Commission to the CFPB, but both agencies continue to have enforcement. JUSTICE SCALIA Don't use initials. MR. MORAN I won't. Okay. So the Consumer Bureau inherited authority from the Federal Trade Commission, so it now has the interpretive authority. But if I may, I'd like to start with the constitutional issue, which deals with the constitutionality of California's Investigative Reporting Agencies Act. And here's what the District Court said at page 46 of the excerpt of record about that act. It says, the Court concludes that the criminal information in the report here clearly subjects it to the Consumer Reporting Agencies Act and to the Investigative Reporting Agencies Act. And then two sentences later, here's the holding. The ICRA, the Investigative Act, is unconstitutionally vague because it failed to provide adequate notice to the defendant as to whether the statute covered this report. Now, I'd submit at the very least there's a little contradiction here, because the Court is at once saying that the statute clearly does cover the act. JUSTICE ALITO I'm not sure that the conclusion that it's constitutionally, that it's unconstitutional because it's vague is right. I have real doubts about that conclusion, and I think your arguments are well taken on it. But it is the rule in this Court that we follow California Court of Appeals decisions to determine what California law is, unless there is good reason to believe the California Supreme Court would not follow them. And in this case, I don't see a good reason to think that California wouldn't follow the Court of Appeals decision. MR. RIEFFEL Oh, I think there are many good reasons, Your Honor. JUSTICE ALITO Good reasons why, if it took the case, maybe it shouldn't, but that's not the same thing as saying that it wouldn't. There's no conflicting authority to look to. They've had their shot at it. They denied cert or whatever they call it in California. They have chosen not to review the question,  MR. RIEFFEL Sure. A couple of points, Judge Kleinfeld. First, with respect to the Federal to Federal constitutional law, this Court decides for itself what the Federal constitutional means, Federal constitution means. And the California Court of Appeals decision on that question is just as good as a court in Nebraska. It's entitled to persuasive weight, but it's not the Court doesn't defer to that. So I take it that what you mean is that the Federal constitutional holding is based at least in part on the reading of the State statute. And to that degree, I think you're right. If any decision is an application of law, not merely a statement of law. MR. KLEINFELD Right. And I think to the extent that the California Court of Appeals was basing its decision at least in part on its reading of the statute, I think you're right that you look to that decision as one point of data in predicting what the California Supreme Court would do. But this Court has to do more, more, not just a point of data. If it was a point of data, I'd be inclined the other way. But it is California law, unless there's good reason to think the California Supreme Court would go otherwise. Well, what this Court has said, I'll read you from Carey v. Supershuttle, a recent decision of this Court. This Court must predict how the California Supreme Court would decide the issue using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids. So the statute itself is also an interpretive aid. And I think that to the extent that the California Court of Appeals' decision rests on some reading of the statute, you know, the decision is a little confusing. It seems to be reading into the statute some kind of meta rule that says even if it's clear that these two statutes cover this report, and I don't think there's really any disagreement among the parties or the district court about that fact, that there's some kind of rule that says that these two statutes never the twain shall meet, that they have to be mutually exclusive. Now, I mean, with respect to the — all due respect to the California Court of Appeals, you cannot find that anywhere in the statute. It is true that when the statute was enacted in 1975, these reports, investigative reports and consumer credit reports, were largely distinct categories, but even then, they were overlapping. And they became much more overlapping categories in 1998 when the legislature amended the statute. It was concerned about the influx of data, of large databases, and the limitation on investigative reports to personal interviews began to seem a little — a little arcane, because now the real concern was not just people going out and interviewing people, but background screening companies that assembled large amounts of data and sold those reports and used them for tenant screening and for employment screening. And so it is true that what the California legislature ended up with was an overlapping scheme. Not entirely overlapping. The two statutes still reach distinct cases. So, for example, the consumer credit statute reaches the typical credit application. If I apply for a mortgage, I apply for a credit card, and they want to look at my credit report, that is never an investigative report subject to the Investigative Act. That is only a traditional consumer report subject to the Consumer Credit Reporting Act. If, however, I apply for insurance and they look at a report, that is only going to be an investigative consumer report. The Consumer Credit Reporting Act doesn't cover insurance. And the Investigative Act is primarily focused on screening for tenants and employment, because the California legislature made a judgment that the use of this kind of data in employment screening in particular, that's really what they were focused on, can have huge consequences for someone. If you are using data about someone and denying them a job on that basis, and they don't even know what the report says and don't have the ability to contest it, that is a problem. And the legislature thought it made sense to have somewhat stricter requirements in that scenario and somewhat stricter penalties. So there is nothing strange about having these kinds of statutory schemes where they are partially overlapping and partially distinct. And that doesn't present any void for vagueness problem. I mean, Judge Kleinfeld, I share your doubts about the constitutional reasoning here. And ultimately, what you are faced with is only a constitutional holding. And we think it is a Federal constitutional holding. Ortiz, the California Court of Appeals case, was not terribly clear about this. I will grant you that. But it did cite the Supreme Court's decision in Connolly v. General Construction Company to articulate what the standard for vagueness was. It says, it said at the beginning of its discussion of analysis, of its constitutional analysis, that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process. That is a statement of Federal constitutional law from the U.S. Supreme Court. And then two pages later, when the California Court of Appeals reached its ultimate conclusion, it cited again to that case. And so I think the ---- Roberts, I don't see that that's enough to make it a matter of Federal rather than to take more of your time on that point. Sure. And, you know, at the end of the day, it may not matter, because the California Supreme Court has been clear that these provisions are, of the Constitution are coextensive and that California doesn't have any separate due process doctrine. I mean, that's a general, a general understanding of what law is in a basic jurisprudential sense. And the real job of the California Court of Appeals was reading the California statute and deciding whether a reasonable person could figure out what they weren't supposed to do. Right. Exactly. But what's exceedingly odd about this scenario is that everyone agrees that it's clear that both statutes cover the conduct. The ---- My friends over here are not pointing to any prohibition that they can't understand. So I think a credit, a background screening company in the screening pro shoes should have and could have, could have and should have known that they were subject to the Investigative Reporting Act. After all, the statute is aimed precisely at this kind of conduct. And if I may, I'd just, I'd like to turn briefly ---- I know my colleague from the government will be addressing the Federal issue ---- I'd like to turn briefly to the Federal issue, because I think here, again, the district court misfired. The district court, again, was reaching back to the pre-1998 version of the Fair Credit Reporting Act, which said that the reporting of criminal charges, that period ran from the date of disposition. So, in other words, a dismissal of a criminal case. But in 1998, Congress amended the statute. And it changed the statute to make it illegal to report criminal information from the date of entry. So here you had a criminal charge, and the criminal charge was more than 7 years old. In fact, it was a decade old. And so under the clear text of the ---- Roberts. Entry is somewhat ambiguous. Judgments get entered. Entry means the clerk writes on the docket book for the day she files the judgment. She enters it on the docket book. You don't enter charges in the same way. I think that's why there's some room for administrative interpretation. Well, I mean, fine. You know, I don't see the ambiguity, because I think if it's going to mean anything in the situation of a charge, it would mean the day the charge is entered. It might mean the day the charges don't get entered, they get filed. I guess you could say when the filed charge is entered in the docket book. Exactly, Your Honor. But I think to the extent that there is any ambiguity, that's what we have administrative agencies for. And the administrative agency is going to explain to you why, in its view, the district court was clearly wrong. And with that, I'll turn my time over to them. Thank you. Good afternoon, Your Honors. May it please the Court, I am Nandan Joshi for the Consumer Financial Protection Bureau. Your Honor, that is the new bureau that was set up with the Dodd-Frank Act that was enacted in 2010. We are joined in the brief by the Federal Trade Commission, which has long had enforcement authority under the Fair Credit Reporting Act, and I will be addressing only the Fair Credit Reporting Act issues in this case. We read Section 1681C-A-5 of the Fair Credit Reporting Act to prohibit a reporting agency from reporting any adverse item of information other than a criminal conviction that is more than seven years old. Now, in this case, the district court held that a consumer report that could report a criminal charge, a misdemeanor charge, that occurred more than ten years ago. And we, in our view, that is simply a misapplication of the seven-year reporting period by the district court, and that was error that this Court should reverse. Now, it's not disputed that a misdemeanor charge is itself an adverse item of information under Section 1681C-A-5. The question presented is whether the fact that the adverse item of information, the charge, was dismissed in 2004, could essentially extend the seven-year period into an 11-year reporting period simply by the happenstance of when that charge was dismissed. We think the answer to that question is no. There is nothing in the statute itself that allows a seven-year reporting period to be extended based on subsequent events related to that period. Except the old FTC guidance. Well, the old FTC guidance was based on the old Fair Credit Reporting Act statutory language. The FTC seems to have reaffirmed its old guidance in its final report when it turned everything over to the new agency, and the new agency has not issued any official guidance. All we really have is your litigation position. Well, we have the amicus brief, which is joined by both agencies. Your litigation position gets minimal deference. It's a remedial statute. Well, it's designed to regulate the consumer reporting agencies and to provide remedies for them. I think it's a remedial statute. I believe this Court has said so, yes. You're not asking for Chevron deference because you can't get it. It's not a regulation. You don't have a rule in place. That's correct. You don't have a rule. And you haven't issued any formal administrative determination in any way, right? Right. We think the statute is plain on its face. To the extent there, well, that's a different issue, which we'll get to. But what I'm getting at now is you're standing up here wanting deference and I don't think you are entitled to any. You just have to make your case on the merits of the statute being plain, I think. And we're happy to do that. We did not specifically ask for deference in our amicus brief. And so we think, we hope you find our brief persuasive and to the extent you So you're not asking for Skidmore deference either? I think under the law of this circuit, Skidmore deference would be appropriate but we think the result is the same. You don't need Skidmore deference. We do not need Skidmore deference. I'm really reluctant because Skidmore deference is minimal anyway and the agency position has changed. We've got that impenetrable, I think it was a footnote in the final report that has not been changed since by any agency determination that says the opposite of what you're advocating for today. I would disagree with that, Your Honor. The original 1990 commentary essentially parroted the language of the statute. It said that the time for reporting an indictment, which was specifically mentioned in the prior version of the statute, the time for reporting an indictment starts from the date of disposition. That was in the statute. That was in the 1990 commentary that the FTC put out. The next, the statute was amended in 1998. It removed that language completely. There's no more mention of indictments in this section. I understand my question was not about the statute. That was the next thing I was going to come to. My question was about what the, whether administrative guidance has come in any form other than your litigation position in this case and the administrative guidance that appears to suggest the opposite. Those are the two documents. I disagree with the notion that the FTC staff report in 2010 suggests the opposite. It in fact changed the operative language in discussing criminal records. It no longer talks about date of disposition as it did in the 1990 commentary. I see your point on that. It talks about reported event and footnotes 60 of that staff report. What was that? I couldn't get it clear in my head. It's not a regulation. It is not advice to consumers so far as I can tell or to consumer credit agencies or credit reporting agencies. It looks like a history of why the FTC has done what it's done in the past given to assist the staff of the new agency. Is that what it is? My understanding of what happened was at some point the Federal Trade Commission decided to update its 1990 guidance, which it had not done in quite some time. And in some... Just talk a little slower. Sorry, Your Honor. Tell me what is your position. Well, to answer the question, I think they were in the process of doing that. At some point in 2010, Dodd-Frank was enacted. Dodd-Frank conferred rulemaking authority on the Consumer Financial Protection Bureau, which the FTC did not have with respect to this provision. It never had that. That's why their prior guidance always talked about. It was guidance, but it was never a rule. So I think at that point they converted their working project into what ended up being issued, which was a staff report to summarize their history with the Fair Credit Reporting Act. That's the document that was ultimately released. But I did say in footnote 60, to get to your point, we are referencing our prior commentary for the convenience of the readers, but we are changing some of the language to reflect changes in the amendments to the Fair Credit Reporting Act that were enacted. And one of the changes in language that they made was instead of talking about the date of disposition... I'm sorry, I know I'm talking quickly, Your Honor. Instead of talking about the date of disposition, they changed the language to talk about the date of the reported event. In this case, the reported event is the misdemeanor charge. This is on page 57 of the 40-year report. We're talking now about 1681 C.A. 5, right? C.A. 5, that's correct. And all it says is date of entry. C.A. 5 does not use date of entry. It talks about an adverse item of information other than convictions of a crime that antedate the consumer report by seven years. Here the consumer report was issued in 2010. The relevant information, and that's at excerpts of record page 67. You can see exactly what they reported. Reported a misdemeanor charge for Mr. Moran that was dated 2000. And so that's ten years, which obviously antedated the report by more than seven years. And the FTC staff report, the 40-year report that was issued in 2010, specifically said criminal records other than... What was the purpose of that seven-year period? The purpose, Congress in the Fair Credit Reporting Act tried to balance both the need for employers, insurers, creditors to have information about consumers with the privacy interests of the consumer. So they set a period of time going back where these agencies could report about consumers. But beyond that time, the information is considered obsolete. And so 1681C has different periods of time for different types of information. So for bankruptcies, it's ten years, I believe, under A1. And then there's a catch-all at the end, which is now A5, which says any other adverse item of information other than convictions of a crime can be reported for seven years. And after that, they should not be reported at all. In this case, so they had a charge, a misdemeanor charge in 2000 in this case. It was dismissed in 2004. Now, the dismissal itself we don't think is itself an independently reportable event because it only makes sense by relating back to the 2000 charge, which is the actual adverse item of information. And that is the change that was brought about by the 1998 amendments. Prior to that, an indictment could be reported. The seven-year period for reporting an indictment. The stigma was there from the time the charge was filed. That's correct. That's the ultimate adverse. And so if you add it on, if the seven years is added on to the time the charge is dismissed, then you're adding another four years to this. Right. So you could have... ...of this person trying to improve their situation. Right. One of the unfortunate consequences of the old rule was if you had two people who were charged with similar misdemeanors, the amount of time the reporting period for each of them could depend not on when they were charged, but on the happenstance of when that charge was dismissed. So someone could get their charge dismissed right away, the other one four years later, and eight years down the road one is free of that information and the other one is not. They can go in and get the charge dismissed. Right. And I think most of the time the charges don't last that long. I'm not a criminal lawyer, so I'm not sure how often these types of delays occur, but I think it's a rare instance. But in this particular case, the charge was dismissed in 2004. So as of 2008 at least, the consumer report on this person, Mr. Moran, should have not had any information regarding this charge rather than the fact that it was dismissed in 2004, a 2000 charge was dismissed in 2004, which is what the current report, once again on page 67 of the excerpt of record indicates. And so we do think the 1998 amendments did affect change in the law on this point. We do not believe the Federal Trade Commission ever took a contrary view after the 1998 amendments were enacted and they did join our brief. And so they have that as their view as well. And I hope reading footnote 60 along with the change in language in page 57 of the report convinces Your Honor of that. If the Court has no further questions... Why shouldn't we just look at the statute and not deal with the administrative guidance at all as having any force and just say if we decide to agree with you that the charge was an adverse item of information and it antedated the report by more than seven years and that's all she wrote? That would be the simplest way of resolving that issue. That's correct. We're not insisting that the Court defer to us. I'm more concerned by any claim to deference than I am by the statutory interpretation. That's fair enough. And as I mentioned, we do not raise deference in our brief because we do think the statute on itself is clear on its face. There isn't any rule? There's nothing in CFR interpreting this new version of subsection 5? So we just interpret it, right? That's correct, Your Honor. You may do that. Thank you. Thank you, Your Honors. Good afternoon, Honors. May it please the Court, my name is Michael Saltz. I represent Defendant and Appellee, the Screening Pros. And there are so many issues here to discuss, however, I have narrowed... How about the seven years?  rather than the threshold issue? Yes, Your Honor. Okay. I'm really curious. Leaving aside all this stuff about the footnotes and the staff guidance and the history of the FTC and all that, why shouldn't we just read 1681 C.A. 5? The fact that this fellow Moran was charged is adverse in its information and it's not a conviction and it antedated the report by more than seven years. Why isn't that the end of it? I'm glad you asked that because dismissals... Any other adverse item of information other than records of conviction of crimes which antedates the report by more than seven years. That's correct. Your Honor, focus on the word... That's what we're looking at. Yes. Any item of adverse information. We're looking at you, too. Thank you. Thank you. Did I dress well today? The only SCRA issue before this Court, if you get past the threshold issue of the fact that there are no damages, there's no willful intent in violating the law, so that's an independent ground to uphold the particular judgment. So if you get past that and get to the FCRA issue, whether a criminal dismissal is itself an adverse item of information that can be reported for seven years or whether it can never be considered an item of adverse information thus limiting its reporting period to seven years from the date of indictment according to what the CFPB or the Consumer Financial Protection Bureau just argued. The charge here, I had assumed it was a criminal complaint rather than an indictment because it looked like a misdemeanor. It is. I don't recall anyone telling me. That's correct. It is. I'm using the word indictment for lack of a better term because the FCRA used to focus on the word indictment. But indictments are different. That's correct. Policemen file charges in some jurisdictions and assistant DAs do in other jurisdictions. Grand juries do in felony cases. That's correct. It's a different animal. Here it would be this was a misdemeanor drug charge and in this particular instance all evidence suggests that Mr. Moran was convicted of the charge and either through a plea deal or through a 1231.4 motion had it set aside after he served his full sentence in order for the dismissal. It looks like that's probably what happened here. It looks like the guy is a criminal who is not going to get an apartment regardless. My only question here is the only thing that we really matter on here is this federal credit reporting statute because California decides California law. Thank you. Then I'll ignore the ICRA issue as far as that goes and aside from the fact that it was also a waiver threshold. I'm not asking you to. It's just my priority was this. Thank you. The issue with regard to determining whether a dismissal is reported or not is if you consider itself adverse information. Now Mr. Moran argued in his brief and I quote no consumer reporting agency may make any consumer report containing and in italics any other adverse item of information. Why is dismissal adverse? Because as you just pointed out it allows you to make the inference that the consumer is not necessarily innocent. I refer this Court to a very recent The charge was misfiled and upon realization of that the case got dismissed. Well that very well may be but that would be not necessarily the speculation that normally happens with regard to criminal dismissals. There isn't a negative inference that's drawn from a dismissal is there? The Court in Dunford in August 12, 2014 decision specifically said yes, there is. Specifically while preparing for oral argument this week we came across the Northern District Court case Dunford v. American Data Bank, LLC. The citation is 2014 You have to write this down on gum sheet. We're actually in the process of preparing a Rule 28 letter. We just found this case. The Northern District has said a dismissal is adverse information because it suggests that a charge was filed and it may lead to inquiry into other things. Well that's correct. The judge there ruled in opposite to the Consumer Financial Protection Bureau's amicus. It said it was aware of the amicus it was aware of this case it was aware of the appeal and it said and I quote this order disagrees that a dismissal falls short of being an adverse item of information. It is common knowledge that a plea bargain often involves a guilty plea to one or two counts in exchange for dismissing other counts leaving the world to speculate whether the offender may well have been guilty of more than what he pled to. So understand that this takes us back to the definition and as I was saying that Mr. Moran tells this court that the definition of no consumer reporting agency may make any consumer report containing any other adverse item of information which antitates the report by more than seven years. He says the catch all phrase any other adverse item of information is meant to have an expansive meaning. So if I understand your argument you don't need the argument that what matters is whether the dispositions within seven years. All you need is the argument that dismissal of a criminal charge is itself adverse information. That's correct Your Honor. The CFPB admits this. In its brief it specifically said courts have found adverse information to mean information which may have or may reasonably be expected to have an unfavorable bearing on a consumer's eligibility or qualifications for credit insurance employment or other benefits and it cites several cases for that. You're saying this is like when we see a rap sheet and a pre-sentence report and there are pages of criminal charges and after every one of them it says dismissed and the probation officer is still thinking this guy is a bad actor. My first job out of law school was in the district attorney's office so I know I have that same view. Now maybe my own interpretation is a little jilted because I know how the system works and specifically criminal dismissals don't normally come because a particular consumer is innocent. Well they come for all sorts of reasons. Sometimes they do come precisely for that reason. Sometimes. I mean those of us who have done criminal defense work have occasionally had an innocent client and the charges were dismissed because the DA was satisfied that our clients were innocent before we ever got to trial. That's correct but the problem with that dismissal is twofold. Number one the test is not to look at it from the consumer's perspective the test is to look at it from the third party's perspective who is going to be issuing the credit or determining whether to hire you or determining whether to provide you with housing and short of a not guilty verdict dismissals as the Dunford Court said leaves everyone to speculate as to what necessarily happens. But not guilty that's why the Supreme Court said that a person may be have a sentence increased for relevant conduct that he was found not guilty of because all that shows is that he wasn't proved guilty beyond a reasonable doubt and he still might have been guilty by a preponderance of the evidence. That's exactly my point though. It's not a matter of the information actually being adverse. It's a matter as the case law cited by the CFPB in their brief dictates is a may standard a possibility is if the answer it's not a matter of degree but the CFPB keeps arguing is that the dismissal usually is not as bad or as adverse as the indictment. But the minute that you get into that argument you've already declared that dismissals are themselves independent adverse items of information. I will You have some case law incidentally for the proposition that a dismissal is adverse either because it suggests a likelihood of guilt of something or because it raises a reason for further inquiry. I just cited the Dunford case. Just that new northern district case. Right. Well that case also referred to a case up in Washington where it also said that dismissals were adverse items of information. That judge up in Washington also said that dismissals were adverse items of information but it also said arrest records were adverse items of information and kind of confused the issue. Dunford was very concerned   of dismissals and the other case  was cited is called Haley. H-A-L-E-Y. Haley? Yes. Like the comet, huh? Yes. Haley and I if you will allow me to grab my book. And also tell us what authority there is for saying we should construe any other adverse information liberally? Well the citations were issued sorry were set forth by the CFPB in their brief and they specifically cite to Seamans versus Temple University Well did you give me Haley? Not yet Your Honor. Sorry I was sidetracked. Haley only comes around about once every 80 years. That's correct Your Honor. You know who was born when This is a trick question. No I don't Your Honor. Mark Twain And you know who went out and left us when Haley's comet appeared again? No Your Honor. Mark Twain That's why they call him Mark Twain I did not know that. That's not a joke No That's what he says in his biography Autobiography We got the citation of Haley Yes Your Honor Haley versus Talent Wise Incorporated Versus what? Talent Wise is one word Talent Wise W-I-S-E Incorporated And it appears to have a citation of 9F Sup 3rd 9F Sup 3rd 3rd 1188 11 8 8 Correct And the citation to Dunford Dunford Yes D-U N-F-O-R-D D-U-N-F-O-R-D Yes Okay Versus American Data Bank LLC Yeah 2014 2014 U.S. District Lexis Lexis Yes That means it's unpublished The district court did not send it for publication No It was an order that just came down denying a motion for summary judgment where the judge specifically found Did he direct publication All I have is the Lexis and West law The way it works when you're a district judge is anytime you want you send something to West and they publish it and when you don't send it to them Lexis or various services like the Indian law reporter and the labor law reporter may publish it anyway but it's still counted as unpublished Right I have nothing in the record saying not for publication Okay So the way we looked at it was that this is a something that was submitted for publication and is awaiting its number since it only came down in August Okay Alright So Who Who Who Who is the judge on Dunford Judge Alsup A-L-S-U-P Who is the one on Haley That I don't know your honor That case was out of Washington Still within the Ninth Circuit but it was in one of the Washington districts Does your claim under the Federal Credit Reporting Act get anywhere if Moran can't prove damages I'm sorry Are damages an element of the Federal Credit Reporting Act claim Yes your honor The very first threshold in order to even basically address the Fair Credit Reporting Act issue is on damages and as we cite in our brief this court has put her name on several of those cases your honor So even if we reject your argument on how to interpret the statute you would still have to prevail in the absence of damages I don't have to prevail we won we filed a motion for summary judgment which also argued that there were no damages and no evidence was submitted of willful conduct specifically under the safeco standards no evidence of damages no evidence of willful conduct to put into being tested because there was no evidence submitted on the issue and as a result the judgment would stand regardless however what we have here is that dismissals have always been considered adverse items of information they've always been treated as adverse items of information the problem didn't occur until congress should stick our necks out on that on interpreting a federal statute if you win anyway on an alternative ground like lack of damages or willfulness that was actually my first argument but you told me to jump right into the fcra issue you're absolutely right with regard to the consumer financial protection bureau not meeting the standard set forth in the price case none of its interpretations were necessarily brought forward to this court after it had opened it up for public review it was done solely for the purpose of this litigation and now we have district court judges saying I don't agree with you I agree that it's not a matter of degree the question is if anybody may determine that the information is adverse in any way to the consumer then Congress put in the protection of limiting that information for seven years now of course a criminal dismissal is adverse and I'm not going to be here to tell you that the criminal dismissal is more adverse than the charge itself or the indictment itself however unless the criminal dismissal can tell the world and speak to a consumer's innocence the criminal dismissal will always allow the world to speculate as to an individual's innocence and in that particular regard another kind of information that is not like an employee who works long enough to get unemployment and then drawing unemployment until it's no longer available and then taking a different job and working just long enough to draw unemployment some people do this kind of job hopping an employer might regard it as a strong indication that this person should not be hired but it is not adverse in the sense of the other things that are listed in the statute can that be reported when it's stale when it's not stale is it adverse well that's really interesting because that's not normally data that would appear in a consumer credit report I mean one of the issues that we raised at the trial court but the trial court never had a chance to brief was we're talking about matters of public record we're talking about first amendment speech about talking about what happens with our government with our court systems and in particular what happens in criminal cases what happened earlier today as far as the discussions were there was a compromise that Congress struck with the needs of the consumer to have the information fall off at some particular date and so until we get to the first amendment issue right now the criminal dismissals are always positive information always in every instance and always speaks to the consumer's innocence and can never ever be construed negatively or unfavorably against the consumer I've lived with this my whole life I'm passionate about the issue your honor and the fact of the matter is that to the extent that the industry around the entire country is going to be   it's going to be destroyed I don't know that most people think that when the case is dismissed that there are all kinds of other overtones to that well that you know it seems to me that congress has given us that seven years and like most legislation it's a compromise right correct yeah and and you know one of the goals here is to give people a chance to straighten out their credits credit that's correct so and we want to get people back on their feet so they can start get jobs and become consumers and all the rest of it so why should  choose to have the seven years start to run from say the date the complaint or the citation as far as well for the main reason that Congress intended to expand upon the reporting of criminal information not shorten it see this was part of an amendment that was designed to address the seven years and it turned out that wasn't long enough because trucking companies would go ahead and get a report which was limited to reporting especially conviction information for seven years and would send a truck with its load all the way up to the border in Canada under the NAFTA agreement which was supposedly allowed to have free trade in North America and the truck driver couldn't get into the country because Canada doesn't allow people with any convictions into the country. No criminal record whatsoever and the employers were asking how are we supposed to know about this information and it's costing us hundreds of millions of dollars a year to have the truck drive all the way back and the truck driver had a potential criminal record. So it affected trade. So then it went to Congress and Congress said okay this is what we're going to do. We're going to lobby us prevail. Sure and it made sense and so what it did was it left the criminal record information other than records of arrest under the general catchall and we know this because it used the words in the catchall any other item of adverse information except for criminal case convictions cannot be included in the report if it antedates the report by seven years  dismissal and so the CFPB admitted in their brief there can be more than one reportable item from a criminal case it's footnote 16 on page 15 of their brief they flat out admit that it's subject to reportable events that's why they cited end note 197 because it included dismissals and they said it should be seven years from the criminal case and it's not an as applied statute it's not it's not a statute that says it's a matter of degree it's a statute that says if anyone may look at this negatively we want to give the consumer the most amount of protection possible and limit the reporting of that information so at that point it becomes archaeological still and someone may look at this statute it    may look at this statute it becomes if anyone may look it becomes if someone may look at this statute it    may look at this statute it becomes if someone may look at this statute it becomes if someone may look at this statute it becomes if  looks     becomes if someone may look at this statute it becomes if someone looks at the statute it becomes if the statutory offense we are making clear that the dismissal is in itself adverse information you are putting a limit on how long such information can be reported and as I said congress deliberately left this took out the word indictment and the CFPB told this court that a criminal case can have more than one adverse item of information so it's not just the charge because nothing in a criminal case exists before the CFPB and the reason we know that is because they took convictions out of the equation convictions are reportable forever this is the balance that congress struck this is what congress said was striking the balance between a consumer's right to privacy and the needs of commerce let's not forget the FCRA is there and also to make sure that our banking system runs efficiently and that we can get credit decisions back in a reasonable period of time and as we put in our brief we have a very strong credit system which is the envy of the world and a lot of that has to do with our ability to issue these reports and to have finite rules within which to follow and if we're going to take what we have to  with our ability to issue these reports we have to follow these rules and we have to follow these rules and we have to follow them     make sure we issue these records the mentioned reports one is the significance dismissal and the threshold issues of damages let me start because I did not have the time        have the time to do that and I did not have the time to do that And so I did not have the time to do that and I did not have the time   that and I did not have the time to do that and I did not have the time to  that   did not have the time to do that and I did not have the time to do that and I do not have the drive to do that and I do not have the time to do that and I do not have a drive to do  and I do       that   do not have the time to do that and I do not have the drive to do that and          and I do not have the drive to do that and I do not have the drive to do that
judges: Pregerson, Kleinfeld, Nguyen